v.

LaPORTE REGIONAL HEALTH SYS-TEM, INC., f/k/a LaPorte Hospital, Inc. and LaPorte Regional Physicians Network, Inc., f/k/a Lakeland Area Health Services, Appellees/Defendants.

No. 46A05–0909–CV–518.

Court of Appeals of Indiana.

Feb. 22, 2010.

Kenneth J. Allen, Robert D. Brown, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellants.

David C. Jensen, Louis W. Voelker, Eichhorn & Eichhorn, LLP, Hammond, IN, Attorneys for Appellee LaPorte Regional Physicians Network.

## OPINION

BRADFORD, Judge.

Appellants/Plaintiffs A.S. and M.S. appeal from the trial court's entry of summary judgment in favor of Appellee/Defendant LaPorte Regional Physicians Network, Inc. ("LRPN"). We affirm.

## FACTS AND PROCEDURAL HISTORY

As of February 1, 2002, A.S., an employee of LaPorte Hospital ("the Hospital") had worked in a phlebotomy laboratory in the Heritage Place building in LaPorte for approximately one year. The laboratory was located in Suite 308 of Heritage Place, a suite known as the "Specialty Center." As it happened, the laboratory was located in space the Hospital, which owned Heritage Place, had leased to LRPN. LRPN, however, did not occupy, possess, or control the laboratory space in which A.S. worked. Moreover, no employees of LRPN worked in the laboratory or had any right to control it in any respect. The Hospital provided all necessary materials and safety equipment to A.S. and her fellow employees.

On February 1, 2002, A.S. was working in the laboratory, drew the blood of an AIDS patient, and sealed the blood into a test tube. After centrifuging the sample, A.S. opened the test tube over a sink. As A.S. did so, some of the blood splashed into her right eye. A.S. was later found to be HIV-positive.

On October 17, 2002, A.S. and her husband M.S. filed a negligence suit against, inter alia, LRPN, contending that it "owned, operated, managed, maintained or controlled" Heritage Place on February 1, 2002, and that it "undertook the duty to establish a proper policy and procedure for universal precautions and personal protection from exposure to infectious agents at Heritage Place and to assure that personal [sic] handling potentially infectious materials were provided with necessary personal protective equipment and supplies." Ap-

pellant's App. pp. 16–17. A.S. alleged that she had contracted AIDS, and M.S. alleged loss of consortium, due to LRPN's negligence.

On January 15, 2009, LRPN filed a summary judgment motion, contending that it owed no duty of care to A.S. On April 30, 2009, A.S. and M.S. filed a response to LRPN's motion, contending that LRPN owed a duty to A.S. stemming from federal and state regulations, the lease agreement between the Hospital and LRPN, and LRPN's in-concert actions with the Hospital. On August 12, 2009, following a hearing, the trial court entered summary judgment in favor of LRPN.

## DISCUSSION AND DECISION

### Summary Judgment Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### Negligence and Duty of Care

To prevail on a theory of negligence, a plaintiff must prove: (1) that the defendant owed plaintiff a duty; (2) that it breached the duty; and (3) that plaintiff's injury was proximately caused by the breach. *Dennis v. Greyhound Lines, Inc.*, 831 N.E.2d 171, 173 (Ind.Ct. App.2005), *trans. denied.* Summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Rhodes v. Wright,* 805 N.E.2d 382, 387 (Ind. 2004). Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Id.* at 385. Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind.2003). *Ill. Bulk Carrier, Inc. v. Jackson,* 908 N.E.2d 248, 253 (Ind.Ct.App.2009), *trans. denied.* Appellants contend that the trial court erred in entering summary judgment in favor of LRPN, arguing that LRPN had a duty of care with respect to A.S. that arose from (1) its lease contract with the Hospital, (2) federal and state regulations regarding safety in the workplace, and (3) its "in-concert" actions with the Hospital.

### I. Whether LRPN had a Duty of Care to A.S. Arising from its Lease Contract with the Hospital

Appellants contend that LRPN contracted a duty of care to A.S. through its lease agreement with the Hospital for Heritage Place, in which it agreed, *inter alia,* to comply with all applicable laws and regulations in the use of the leased premises and not to permit any illegal business to be conducted on the premises.

A lease is interpreted in the same way as is any other contract. *Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 102 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* The primary goal of contract interpretation is to give effect to the parties' intent. *Beiger Heritage Corp. v. Montandon,* 691 N.E.2d 1334, 1336 (Ind.Ct.App.1998). Accordingly, when the terms of a contract are clear and unambiguous, they are conclusive and the court will not construe the contract or look to extrinsic evidence. *Id.* Rather, we will merely apply the contractual provisions. *Id.*

*Ind. Port Comm'n v. Consol. Grain and Barge Co.,* 701 N.E.2d 882, 887 (Ind.Ct. App.1998), *trans. denied.*

▬ Generally, one cannot be held liable for the negligent acts of another unless a master-servant relationship exists. *Perryman v. Huber, Hunt & Nichols, Inc.,* 628 N.E.2d 1240, 1245 n. 10 (Ind.Ct.App. 1994), *trans. denied.* A duty of care, however, may arise contractually. *Plan–Tec, Inc. v. Wiggins,* 443 N.E.2d 1212, 1218 (Ind.Ct.App.1983). In determining whether a duty exists, we will give effect to the intent of the parties as reflected by the contract language, and if a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty. *Id.*

Appellants point to the following lease provisions as imposing a duty of care on LRPN:

### OCCUPANCY AND USE

[LRPN] shall use and occupy the premises for medical office purposes, and for no other purpose whatsoever unless permission is granted in writing by [the Hospital]. Any use of the Premise other than as permitted herein is not authorized and [LRPN]'s use of the Premises for any other purpose may invalidate any policies of insurance now or hereafter carried on the Building or may increase the rate of insurance on the Premises or on the Building. In such event, Tenant shall pay all extra insurance premiums which may be caused by any unauthorized use which [LRPN] shall make of the Premises. [LRPN] shall comply with all of the governmental, health, and fire requirements and regulations respecting the Premises and shall not conduct or permit to be conducted on the Premises any business which is contrary to the laws of the United States of America, or of the State of Indiana, or which is contrary to the ordinances of the City of La Porte, Indiana.

\* \* \* \*

*COMPLIANCE WITH LAWS.* [LRPN] shall comply with all applicable federal, state, and municipal laws, ordinances, and regulations and building rules, and shall not directly or indirectly make any use of the Premises which may be prohibited by any thereof of which shall be dangerous to person or property or shall increase the cost of insurance or require additional insurance coverage.

Appellant's App. pp. 141, 162.

Appellants first note that LRPN obligated itself to comply with all "governmental, health, and fire requirements and regulations respecting the Premises" and argue that it did not do so with respect to various federal and state regulations regarding safety equipment. Appellant's App. p. 141. In particular, Appellants point to regulations promulgated by the United States Occupational Safety and Health Administration ("OSHA") and the Indiana State Department of Health ("ISDH") regarding workplace safety. The OSHA regulations in question, however, apply only to "em-

ployers," and there is no dispute that LRPN was not A.S.'s employer. *See* 29 U.S.C. § 654(a) (2002) ("Each *employer* . . . shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees [and] shall comply with occupational safety and health standards promulgated under this chapter.") (emphasis added).

■ Moreover, the applicable ISDH regulations apply only to "facility operators," and, contrary to Appellants' argument, we conclude that there is no designated evidence that LRPN operated the laboratory. *See* 410 IAC 1–4–6 (2002) (An individual or entity *that is a facility operator* shall comply with the following:. . . . Ensure that each covered individual whose professional, employment, training, or volunteer activities or duties are performed at or on behalf of the facility, is provided appropriate equipment and expendables needed to implement the precautions required under section 8 of this rule (410 IAC 1–4–8) and under the Indiana occupational safety and health administration's bloodborne pathogens standards ("as found in 29 CFR 1910.1030).") (emphasis added).

"Operator" may be defined as something or someone that "actively operates a business (as a mine, a farm, or a store)[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1581 (Phillip Babcock Gove et al. eds., G. & C. Merriam Company 1964). Quite simply, there is no designated evidence whatsoever that LRPN had any active role in the day-to-day operations of the laboratory. Robert Nelson, director of Laboratory Services for the Hospital, averred that the Hospital had "exclusive authority and control over the manner and means of work done by A.S. at that 'blood draw station' in the Heritage Place office

building" and that LRPN policies and procedures did not apply to A.S. Appellant's App. p. 47. LRPN Chief Operating Officer Mary McDermort averred that LRPN "had no authority or control over the manner and means of work done by A.S." and that LRPN did not "own, possess, [or] control" the laboratory in which A.S. worked. Appellant's App. pp. 55, 56. Appellants point only to deposition testimony from Linda Satkoski, a Hospital senior vice-president, that the Specialty Center was "essentially run" by LRPN as evidence that LRPN operated the laboratory. Appellant's App. p. 268. This statement, however, is consistent with the fact that LRPN had a certain amount of control as landlord of the Specialty Center without suggesting that it had any influence over the day-to-day activities of its tenants, of which the laboratory was only one of apparently many. Without more, we conclude that Satkoski's vague statement is insufficient to rebut LRPN's evidence that LRPN had no control whatsoever over the laboratory. Consequently, ISDH regulations regarding workplace safety did not apply to LRPN *vis-à-vis* the laboratory on February 1, 2002.

■ Appellants also note that LRPN obligated itself to "not conduct or permit to be conducted on the Premises any business which is contrary to the laws of the United States of America, or of the State of Indiana, or which is contrary to the ordinances of the City of La Porte, Indiana." Appellant's App. 162. Appellants would have us adopt a very broad definition of "business," one that would essentially make LRPN liable for any activity whatsoever at Heritage Place that runs afoul of any law or regulation. We do not think that such an expansive interpretation is supportable.

■ "The general rule dealing with undefined words in contracts is to use the

plain meaning of such words." *Pub. Serv. Co. of Ind. v. Miller Constr. Co.,* 535 N.E.2d 573, 574 (Ind.Ct.App.1989), *trans. denied.* Although "business" is undefined in the lease, Black's Law Dictionary defines "business" as "[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood." BLACK'S LAW DICTIONARY 198 (6th ed.1990). Based on this definition, we conclude that "business" as it is used in the lease refers to the general character of the activity in question, not the particular actions of every employee engaged in the general activity. In this case, then, the "business," or the commercial activity engaged in for gain that LRPN permitted, was the operation of a phlebotomy laboratory, which is unquestionably legal as a general proposition. Moreover, we see no other indication in the lease that the parties intended that LRPN affirmatively accept a duty to ensure the safety of all persons working in the Specialty Center. We conclude that LRPN did not assume, through its lease agreement with the Hospital, a duty to ensure that A.S. was provided with and used proper safety equipment.

Somewhat similar Indiana cases that reach the opposite result are distinguishable. In *Perryman,* 628 N.E.2d at 1240, and *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145 (Ind.Ct.App.1995), as here, the question was whether a party had assumed, through contract, a duty to the plaintiff it would not have had otherwise. In both cases, however, the contractual provisions at issue explicitly and unequivocally provided for such an assumption of duty. In *Perryman,* in which a construction worker was killed at a job site, construction manager Huber, Hunt & Nichols "agree[d] that it [would] comply with all applicable state and federal statutes and other governmental regulations pertaining to employment, *and that it [would] require like compliance therewith from all Trade Contractors[,]*" one of whom was the deceased Perryman's employer. *Perryman,* 628 N.E.2d at 1244 (emphasis added). Unlike here, Huber, Hunt & Nichols specifically assumed the duty to ensure subcontractor compliance with applicable safety regulations and so could be held liable for a negligent failure to do so.

In *Williams,* in which the plaintiff was injured when the caged basket in which he was riding fell from a crane, one of the defendant subcontractors had specifically obligated itself to take "[a]ll necessary precautions for the safety of employees of Owner, ... Subcontractor and any other contractor, *and others* on the site[.]" *Williams,* 656 N.E.2d at 1155 (emphasis in original). As in *Perryman,* this language represents a clear assumption of a duty to ensure the safety of every person at the job site, and therefore subjected the defendant to liability for a negligent failure to do so. LRPN's lease agreement with the Hospital, in contrast to the contracts in *Perryman* and *Williams,* contains no language expressing a clear intent that LRPN assume a duty to ensure the safety of all persons working in Heritage Place, regardless of who might employ them. Consequently, *Perryman* and *Williams* do not help Appellants.

## II. Whether LRPN had a Duty of Care to A.S. Arising from Federal and State Regulations

Appellants also argue that LRPN had a duty to A.S., arising from OSHA and ISDH regulations regarding workplace safety, to provide her with personal protective equipment. As previously mentioned, however, such regulations apply only to "employers" and "facility operators," respectively, neither of which applies to LRPN. We leave for another day the question of whether such regulations, even

if they did apply to LRPN, would give rise to provide causes of action.

### III. Whether LRPN had a Duty of Care to A.S. Arising from Actions that were Allegedly In–Concert with the Hospital

Finally, Appellants contend that LRPN had a duty to A.S. based on its provision of substantial assistance and encouragement to the Hospital when LRPN knew that the Hospital was negligently failing to provide adequate personal protective equipment to its employees. This argument is based on subsection (b) of the Restatement (Second) of Torts, Section 876 (1965), which provides in relevant part as follows: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]"

Essentially, Appellants argue that LRPN can be held liable for its failure to act in the face of some of its employees' knowledge that A.S. was not being provided with proper safety equipment. LRPN employee Marcie Brown, who worked across the hallway from A.S., testified that she knew that a person should wear a face shield when working with blood, she occasionally saw laboratory personnel working without face shields, and A.S. "voiced concern about not getting the supplies that [she] needed" before the incident. Appellant's App. p. 208. Moreover Brown and fellow LRPN employee Betty Jackson had seen A.S. and a coworker remove rubber caps from test tubes without wearing eye protection.

Evidence of mere acquiescence in tortious activity, however, is insufficient to generate a genuine issue of material fact as to "in-concert" liability. It is well-settled that, "[a]s a general rule, an individual does not have a duty to aid or protect another person, even if he knows that person needs assistance." [1] *Baker v. Fenneman & Brown Props., LLC,* 793 N.E.2d 1203, 1206 (Ind.Ct.App.2003) (citing *L.S. Ayres v. Hicks,* 220 Ind. 86, 93, 40 N.E.2d 334, 337 (1942), *reh'g denied w/opinion,* 220 Ind. 86, 41 N.E.2d 195 (1942)). The defendant must affirmatively act to aid the primary tortfeasor; neither failure to object to the tortious act nor defendant's mere presence at the commission of the tort is sufficient to charge one with responsibility. PROSSER AND KEETON ON TORTS § 46 at 323–24 (William L. Prosser et al., eds., 5th ed.1984). Appellants have done no more than designate evidence tending to prove, at most, mere acquiescence by various LRPN employees in allegedly negligent activity by the Hospital, which is insufficient as a matter of law to hold LRPN liable for that activity. The trial court properly granted summary judgment in favor of LRPN on Appellants' "in-concert" liability claim.

In summary, we conclude as a matter of law that Appellants failed to establish that LRPN had a duty of care to A.S. Consequently, the trial court properly entered summary judgment in favor of LRPN.

The judgment of the trial court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.

---

1. There are several exceptions to this general rule, none of which apply here.