**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 04 2014, 10:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PAUL D. LUDWIG**
Redman Ludwig, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
SHIEL SEXTON COMPANY, INC.
d/b/a SHIEL SEXTON:

**RICHARD R. SKILES**
**JOSEPH A. SAMRETA**
Skiles Detrude
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NATHAN FERGUSON and DEANNA FERGUSON, <br>     Appellant/Petitioner-Plaintiff Below, <br><br> vs. <br><br> SHIEL SEXTON COMPANY, INC. d/b/a SHIEL SEXTON, <br>     Appellee/Respondent-Defendant-Below, <br><br> And <br><br> WR Dunkin & Son, Incorporated; Lynch, Harrison & Brumleve, Inc.; L'Acquis Consulting Enterprises Indianapolis, LLC, d/b/a L'Acquis Consulting Engineers; CSO Architects, Inc.; Beaty Construction Inc.; The Hagerman Group, Inc., d/b/a Hagerman Construction Company; Complete Masonry Services, Inc.; Bybee Stone Company, Inc.; Purdy Masonry, Inc.; Simplex Grinnel, LP; Ermco, Inc.; Lithko Contracting, Inc.; and Poynter Sheet Metal, Inc., <br>     Defendants Below. | ) <br> ) <br> ) <br> ) <br> )    No. 29A02-1310-CT-839 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**June 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Nathan and Deanna Ferguson (collectively, "Ferguson") appeal a grant of summary judgment in favor of Shiel Sexton Company, Inc. d/b/a Shiel Sexton ("Shiel")[1] upon Ferguson's negligence claim. We affirm.

## Issue

Ferguson presents a single, consolidated issue: whether the trial court erroneously granted summary judgment to Shiel upon concluding that Shiel owed no duty of care to Ferguson.

## Facts and Procedural History

In October of 2011, Shiel was the Construction Manager for the Carmel Regional Performing Arts Center construction project ("the Project"), and General Piping, Inc. ("General Piping") was a contractor. Ferguson was employed by General Piping as a

---

[1] Defendants below, but not active parties to this appeal, include WR Dunkin & Son, Incorporated, Lynch Harrison & Brumleve, Inc., L'Acquis Consulting Enterprises Indianapolis, LLC, d/b/a L'Acquis Consulting Engineers, CSO Architects, Inc., Beaty Construction Inc., The Hagerman Group, Inc., d/b/a Hagerman Construction Company, Complete Masonry Services, Inc., Bybee Stone Company, Inc., Purdy Masonry, Inc., Simplex Grinnel, LP, Ermco, Inc., Lithko Contracting, Inc., and Poynter Sheet Metal, Inc.

journeyman pipefitter. At the direction of his General Piping foreman, Ferguson accessed his work site – inside a building foundation – by using a makeshift walkway.[2] On October 20, 2009, Ferguson was leaving the job site and was injured when his right foot went through a board and he twisted his left knee.

On October 19, 2011, Ferguson filed suit against Shiel and several contractors at the Project. With respect to Shiel, Ferguson alleged:

> At the Project, a temporary walkway had been laid across a void in the building's foundation, consisting of a sheet of composite wood (referred to as "OSB board") for the use of Project workers, including Plaintiff Nathan Ferguson, to access their assigned work areas at the Project.
>
> Said OSB board was placed either by Defendant Shiel Sexton or at the direction and with the knowledge of Defendant Shiel Sexton by another of the Defendants.
>
> The Defendants owed Plaintiff Nathan Ferguson and his fellow workers at the Project a duty to use appropriate materials for the erection of said temporary walkway . . .
>
> Said sheet of OSB board was continually exposed to moisture, rain and other forms of precipitation, although it was in no way manufactured, treated or intended to be waterproof or weather resistant.
>
> Said sheet of OSB board [was] inherently unstable and was completely and wholly unsuitable for use as an exposed walkway.
>
> On October 20, 2009, Plaintiff Nathan Ferguson, in the course of transiting his work area, stepped upon said temporary walkway, which, being weakened and rotted by moisture, broke beneath him, causing him serious and permanent injuries, including but not limited to, severe and evidently permanent injury to his left knee.

(App. 36-38.) Deanna Ferguson asserted a claim for loss of consortium.

---

[2] At the particular area, water tended to pool in gravel. A pallet was placed over the gravel and some overlapping unattached sheets of particle board ("OSB board") were used to cover the pallet.

Shiel, who disputed whether it had any duty to Ferguson, filed a summary judgment motion. The trial court conducted a summary judgment hearing on August 14, 2013. Designated materials included the "Construction Management Agreement" to which the City of Carmel Redevelopment Commission ("CRC") and Shiel (referred to in the contract as "CM") were parties ("the Contract"). The Contract contained the following language:

> CM shall provide the following services ….
>
> Coordinate communications between contractors regarding jobsite safety and endeavor to obtain compliance with contractors' contractual obligations regarding safety and recommend to CRC [a] course of action when such contractual obligations are not being fulfilled; provided that CM's responsibilities shall not extend to direct control over, or charge of, the acts or omissions of the contractors or subcontractors, the agents or employees of the contractors or subcontractors, or any other persons performing portions of the work and not directly employed by CM.

(App. 85-87.) The Contract also provided that, "With respect to each contractors' work, [Shiel] shall not have control over … safety precautions and programs, as these are solely the contractors' responsibility under the Contract Documents[.]" (App. 88.)

On September 6, 2013, the trial court granted summary judgment to Shiel, concluding that, based upon Hunt Construction Group, Inc. v. Garrett, 964 N.E.2d 222 (Ind. 2012) (hereinafter "Hunt"), Shiel did not have a duty to provide Ferguson, an employee of an independent contractor, with a safe workplace. Ferguson appeals.

**Discussion and Decision**

I. Standard of Review

Our standard of review for appeals from summary judgment is well established:

4

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (internal citations omitted).

The role of the trial court is not to act as a trier of fact, but rather to determine whether the movant established, prima facie, either that there is insufficient evidence to proceed to trial, or that the movant is otherwise entitled to judgment as a matter of law. Kader v. State Dept. of Correction, 1 N.E.3d 717, 727 (Ind. Ct. App. 2013). Witness credibility and the relative apparent weight of evidence are not relevant considerations at summary judgment. Id. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. Huntington v. Riggs, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), trans. denied. We accept as true those facts alleged by the non-moving party, which are supported by affidavit or other evidence. McDonald v. Lattire, 844 N.E.2d 206, 212 (Ind. Ct. App. 2006).

The trial court's order granting summary judgment is cloaked with a presumption of validity and the appellant bears the burden of demonstrating that the trial court erred.

5

Heritage Dev. of Indiana, Inc. v. Opportunity Options, Inc., 773 N.E.2d 881, 888 (Ind. Ct. App. 2002). A grant of summary judgment may be sustained on any theory or basis supported by the designated materials. Smith v. Yang, 829 N.E.2d 624, 625 (Ind. Ct. App. 2005).

A defendant is liable to a plaintiff for the tort of negligence if (1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the plaintiff, (2) the defendant has failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach. Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C., 929 N.E.2d 722, 726 (Ind. 2010). In negligence cases, summary judgment is "rarely appropriate." Rhodes v. Wright, 805 N.E.2d 382, 387 (Ind. 2004). However, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. Id. at 385. Whether there is a legal duty owed by one party to another in a negligence action is generally a question of law for the court to decide. Chandradat v. State, Ind. Dep't of Transp., 830 N.E.2d 904, 908 (Ind. Ct. App. 2005), trans. denied.

## II. Analysis

Shiel contends, and the trial court agreed, that Shiel is entitled to summary judgment because, in light of Hunt, it has no duty to Ferguson. In that case, Shannon Garrett, an employee of a concrete subcontractor on a project, was injured when one of her coworkers dropped a piece of wood and it struck Garrett. 964 N.E.2d at 223. She sued Hunt for

6

damages, contending that Hunt, as Construction Manager of the Project, had a legal duty of care for jobsite-employee safety.  Id.

The trial court ruled that Hunt could be held vicariously liable for the actions of Baker Concrete, and then certified its ruling for interlocutory appeal.  Id. at 224.  The Court of Appeals accepted the appeal, held that Hunt was not vicariously liable to Garrett for any negligence of Baker Concrete, and divided on whether Hunt owed a duty to Garrett such that Hunt might be liable to her for negligence.  Id.  The Indiana Supreme Court accepted transfer, summarily affirmed the Court of Appeals decision reversing the trial court on the issue of vicarious liability, and addressed the availability of a negligence claim against Hunt. Id.  The Court noted that the parties had discussed the concept of "nondelegable duties" but found this concept applied only to the issue of vicarious liability.  Id. at n.3.

Initially, the Court observed that an employee's rights and remedies against his employer on account of jobsite injuries are governed by the Indiana Worker's Compensation Act, but the Act does not restrict an injured employee from pursuing a claim against any "other person."  Id. (citing Ind. Code § 22-3-2-13).  The Court recognized that, "when the employee of a contractor or subcontractor is injured in a workplace accident on a jobsite where a construction manager arrangement[3] is in place, the employee sometimes seeks to recover from the construction manager."  Id. at 225.

---

[3] Construction management is an alternative to the conventional approach to large construction projects.  A construction manager is not a general contractor, but contracts with the owner to undertake a variety of responsibilities.  The other contractors on the project also contract directly with the owner.  Id. at 225.

The Court revisited Plan-Tec, Inc. v. Wiggins, 443 N.E.2d 1212 (Ind. Ct. App. 1983), finding that it provided "a good template for analyzing [a] claim of negligence against a construction manager for jobsite injuries suffered by a subcontractor's employee." Id. at 226. The holding of Plan-Tec was summarized as:

> (1) where the construction-management contract did not impose any obligation on the construction manager for jobsite-employee safety and contracts with project contractors provided that job-site safety was the responsibility of the contractors and not the construction manager, the construction manager had no duty of care for jobsite-employee safety; but
> (2) where the construction manager took specific actions related to employee safety, there was an issue of fact as to whether it had assumed a legal duty of care for employee safety.

Id.

Accordingly, whether a construction manager owes an employee of a contractor a legal duty of care for his safety requires answering: (1) whether a duty was imposed upon the construction manager by a contract to which it was a party; and (2) whether the construction manager assumed such a duty, either gratuitously or voluntarily. Id. Ultimately, the Court concluded that the contract itself did not impose upon Hunt any legal duty of care for jobsite-employee safety. Id. at 231. Also, Hunt had not undertaken any jobsite-safety actions beyond those required by the contract; thus, Hunt had not assumed by conduct any legal duty of care for jobsite-employee safety. Id.

Here, the trial court found that the Contract did not impose upon Shiel an obligation for jobsite-employee safety. Additionally, the trial court found that Shiel's actions with regard to safety–employing a safety manager, conducting safety audits and weekly meetings,

8

and maintaining records of safety audits–did not amount to jobsite-safety actions beyond those required by the Contract to benefit CRC. On appeal, we will examine the designated materials to determine whether Shiel had a duty to Ferguson either because the Contract imposed such a duty or because Shiel gratuitously or voluntarily assumed a duty by its conduct.

## A. Contractual Duty

"If a contract affirmatively evinces intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty." Stumpf v. Hagerman Constr. Corp., 863 N.E.2d 871, 876 (Ind. Ct. App. 2007), trans. denied. The Contract provides that Shiel was to provide recommendations regarding the allocation of responsibility for safety programs among contractors and was to coordinate communications regarding safety. Shiel was to notify the Commission of any safety violations observed. However, Shiel was not to have control over the safety precautions used in connection with the work, and entered into no contractual relationship with a third party.

Pointing to Shiel's agreement to recommend courses of action for contractor deficiencies, Ferguson likens this case to Perryman v. Huber, Hunt & Nichols, Inc., 628 N.E.2d 1240 (Ind. Ct. App. 1994), trans. denied. In Perryman, a worker in charge of setting four steel I-beam columns at a construction worksite was killed when he fell approximately ninety feet to his death, unprotected by a safety net. Id. at 1242-43. His widow brought an action alleging that the construction manager's negligence and its failure to enforce OSHA regulations proximately caused her husband's death. Id. at 1243.

9

The contract at issue provided: "The Construction Manager [HHN] hereby agrees that it will comply with all applicable state and federal statutes and other governmental regulations pertaining to employment, and that it will require like compliance therewith from all Trade Contractors related to the Project." Id. at 1244. Further, the contract provided that the construction manager was responsible for maintaining a full-time staff to direct and monitor trade contractors' work, determining the adequacy of the personnel and equipment, providing supervision and some equipment, and reviewing contractors' safety programs and making recommendations. Id. The construction manager had "complete authority over the project, with the power to fire any person HHN thought was guilty of improper conduct." Id. On appeal, a panel of this Court concluded that the construction manager had assumed a "contractual duty to enforce all state and federal employment safety regulations on a project-wide basis" including installation of safety nets, and thus was potentially liable to Perryman. Id. at 1244-45.

The instant contract is distinguishable from that in Perryman, as it does not confer upon the construction management company a project-wide duty to enforce safety regulations. Shiel was not charged with reviewing the contractor's safety programs. Rather, Shiel was to coordinate communications regarding safety. Shiel was to report safety violations but had no authority to require compliance from contractors.

Here, as in Hunt, the Contract was only between Shiel and the proprietor of the premises and provided that Shiel's services were to be rendered only for the other contracting party's benefit: "Nothing contained in this Agreement shall create a contractual relationship

10

with, or a cause of action in favor of, a third party against either CRC or CM." (App. 94-95.) Likewise, the Contract itself did not impose upon Shiel any "specific legal duty to or responsibility for the safety of all employees at the construction site." Hunt, 964 N.E.2d at 227.

On the other hand, Ferguson observes that this case is factually distinguishable from Hunt. Indeed, the circumstances here do not suggest vicarious liability for a subcontractor's employee performing his or her job tasks in an unsafe manner; rather, the subcontractor's employee fell on a walkway. This is, at its core, a premises liability case. The question of contractual duty distills to whether Shiel contracted to construct or maintain the walkway to General Piping's work site. Our examination of the Contract leads us to conclude that it does not impose upon Shiel the responsibility for constructing temporary walkways or maintaining points of ingress and egress to contractor work sites.[4] Thus, Shiel had no duty of care for Ferguson's safe ingress and egress across the walkway arising from the Contract.

## B. Assumption of Duty

We next consider whether, by its conduct, Shiel assumed a duty to Ferguson. Ferguson's complaint alleged that the OSB board was placed by Shiel or at the direction of Shiel. When deposed, Ferguson testified that he did not know who created the walkway.

Shiel then designated the affidavit of Michael Anderson ("Anderson"), Shiel's senior project manager. Anderson averred that Shiel did not install, maintain, or repair the

---

[4] Shiel's senior project manager, Michael Anderson, testified in deposition that WR Dunkin & Son, Incorporated was contractually obligated to construct "temporary structures" at the Project. (App. 357.) Nevertheless, the temporary board and pallet walkway did not appear to be a crafted or typical structure but rather appeared to be something simply "placed by somebody." (App. 354.) Anderson had "no idea whatsoever who threw down" the materials. (App. 357.)

11

temporary walkway or instruct another contractor to do so. To withstand summary judgment, it was then incumbent upon Ferguson to come forward with some evidence that Shiel created the walkway or assumed responsibility for its maintenance. No such evidence was designated.

Ferguson did not know the origin of the make-shift walkway of pallets and overlapping sheets of OSB board. Ferguson used the walkway at the direction of his foreman, Jeff Cook. Shiel's senior project manager denied that Shiel had involvement with the structure. No designated materials would support a contrary inference.

In sum, Shiel negated the element of duty in Ferguson's negligence claim. Ferguson did not meet his burden of persuading this Court that summary judgment was erroneously granted.[5]

---

[5] Ferguson additionally claims that summary judgment is precluded because a genuine issue of material fact exists as to whether Shiel was in violation of one or more Occupational Safety and Health Administration ("OSHA") regulations. In his deposition, Shiel's former safety director, Robert Condon, testified that "the 1926 OSHA regulations, CFR 1926, for construction" would have certain requirements with respect to "something [one] can fall through … greater than six feet" to reach a "lower level." (App. 255-56, 273.)

Thereafter, in his response to Shiel's motion for summary judgment, Ferguson claimed Shiel "was negligent and owed a duty to the Plaintiffs under … OSHA" and Shiel had "breached that duty." (App. 164-65.) He now cites 29 CFR §§ 1926.501 - 502, prescribing protection from "falling through holes more than 6 feet above lower levels by … covers" and requiring hole covers "capable of supporting at least twice the weight of employees, equipment and materials that it would be exposed to at any one time," secured "so as to prevent accidental displacement by the wind, equipment or employees" and color-coded or marked with the word "hole" or "cover."

To the extent that Ferguson points to a contractual duty because Shiel agreed to comply with applicable laws, the Contract specified that it created no contractual relationship with, or for the benefit of, a third party.

To the extent that Ferguson attempts to assert an independent ground for recovery, we observe that his complaint against Shiel stated a common law negligence claim, for which the Plan-tec template is applicable. Ferguson did not include an additional count to assert that OSHA created a private right of action for an individual harmed by a violation of a regulation or that a violation proximately caused him injury.

Moreover, although we take the averments of a complaint as true to the extent they are supported by the

Affirmed.

KIRSCH, J., and MAY, J., concur.

---

designated materials, <u>McDonald</u>, 844 N.E.2d at 212, Ferguson made no factual averment in his complaint that Shiel failed to cover, secure and mark a "hole" as contemplated by the cited OSHA regulations, that is, one more than 6 feet above the lower level.

Finally, the designated materials do not suggest that Ferguson fell into an improperly covered hole. According to Ferguson's deposition testimony, his right foot burst through a board laid over pallets resting on gravel laid for a concrete formation. He fell on his buttocks, landing on top of the board. Ferguson has not identified a genuine issue of material fact in this regard which would preclude the grant of summary judgment.