**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 13 2014, 10:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**TIMOTHY F. DEVEREUX**
**LANCE R. LADENDORF**
Ladendorf & Landendorf
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JAMES J. HUTTON**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH MIKE BARNETT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1307-CT-332 |
| | ) | |
| JDH CONTRACTING, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Carol J. Orbison, Senior Judge
Cause No. 32C01-1102-CT-16

**March 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Joseph Mike Barnett appeals the trial court's entry of summary judgment in favor of JDH Contracting, Inc. ("JDH"), on Barnett's claim for negligence. Barnett, an employee of a subcontractor, was injured while performing demolition work on a construction site for which JDH was acting as general contractor. Barnett filed a complaint for negligence against JDH alleging, among other things, that JDH was negligent in failing to provide him a safe workplace. JDH moved for summary judgment asserting that it owed no duty to Barnett as a matter of law. Barnett responded and asserted that JDH owed a nondelegable duty to him pursuant to contract, or in the alternative, that JDH gratuitously assumed a duty to him through affirmative conduct. The trial court entered summary judgment in favor of JDH. The sole issue presented for our review is whether the trial court erred when it entered summary judgment in favor of JDH. Finding as a matter of law that JDH did not owe Barnett a duty pursuant to contract but that a genuine issue of material fact remains as to whether JDH assumed a duty to Barnett through its affirmative conduct, we reverse and remand.

**Facts and Procedural History**[1]

The undisputed facts indicate that, on or about June 30, 2010, JDH entered into a

---

[1] In its appellee's brief, JDH requests that we strike Barnett's "Statement of the Case" as improperly including extensive argument and disputed facts rather than a brief description of "the nature of the case, the course of proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court." Ind. Appellate Rule 46(A)(5). We agree with JDH and exercise our authority pursuant to Indiana Appellate Rule 42 to order the inappropriate and impertinent matter stricken. We also note that Barnett's counsel included a copy of the summary judgment hearing transcript in the appellant's appendix in violation of Indiana Appellate Rule 50(F), which says, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix." We recommend that Barnett's counsel follow our appellate rules in future filings with this Court.

verbal contract with PWG Real Estate to perform renovations on a warehouse in Plainfield. JDH hired a subcontractor, R.F. Mac, Inc. ("R.F. Mac"), to remove a second floor mezzanine area of the warehouse. JDH had a verbal agreement with R.F. Mac which was based upon a written bid proposal for the work submitted by R.F. Mac and accepted by JDH. R.F. Mac began its work on the project on August 9, 2010. Barnett was hired by R.F. Mac to work on the project shortly thereafter.

On August 19, 2010, Barnett was working at the warehouse removing four-foot-by-eight-foot pieces of steel decking. As Barnett was attempting to drop one of the pieces of steel decking from the second floor to the first floor, a sharp edge of the decking made contact with his left forearm causing a significant cut.

Barnett filed a complaint for negligence against JDH alleging, among other things, that JDH was negligent in failing to provide him a safe workplace, resulting in his injuries. JDH subsequently moved for summary judgment arguing that it owed no duty of care to Barnett as a matter of law. Barnett responded arguing that JDH assumed a nondelegable duty of care to him pursuant to contract and through its affirmative conduct. Following a hearing, the trial court entered its order granting summary judgment in favor of JDH. This appeal ensued.

**Discussion and Decision**

Barnett appeals the trial court's grant of JDH's motion for summary judgment. We are reminded that:

> When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there

3

is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party.

*Kroger Co. v. Plonski*, 930 N.E.2d 1, 4-5 (Ind. 2010) (citations omitted). The party appealing a trial court's grant of summary judgment bears the burden of persuading this Court that the ruling was erroneous. *Morris v. Crain*, 969 N.E.2d 119, 123 (Ind. Ct. App. 2012).

Barnett's claim against JDH sounds in negligence. To prevail on a negligence claim, the plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) a breach of duty by allowing conduct to fall below the applicable standard of care; and (3) a compensable injury proximately caused by the defendant's breach of duty. *Kroger*, 930 N.E.2d at 6. Summary judgment is rarely appropriate in negligence cases. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). However, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim. *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012). Absent a duty, there can be no breach, and therefore no recovery in negligence. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). "The existence of a duty is a pure question of law for the court to determine." *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007), *trans. denied.*

In support of its motion for summary judgment, JDH asserted that it owed no duty to provide Barnett a safe workplace. It is well established in Indiana that an employer or general contractor does not have a duty to supervise the work of an independent contractor to

assure a safe workplace, and accordingly, is not liable for the negligence of an independent contractor. *Capitol Constr. Servs., Inc. v. Gray*, 959 N.E.2d 294, 298 (Ind. Ct. App. 2011). "The rationale behind this rule is that a 'general contractor typically exercises little, if any, control over the means or manner of the work of its subcontractors, and requires only that the completed work meet the specifications of the owner of its contract with the general contractor.'" *Shawnee Constr. & Eng'g, Inc. v. Stanley*, 962 N.E.2d 76, 81 (Ind. Ct. App. 2011) (quoting *Harris v. Kettelhut Constr., Inc.*, 468 N.E.2d 1069, 1072 (Ind. Ct. App. 1984), *trans. denied* (1985)), *trans. denied* (2012). However, our appellate courts have recognized the five following exceptions to this general rule: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing a specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will likely cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Beatty v. LaFountaine*, 896 N.E.2d 16, 22 (Ind. Ct. App. 2008), *trans. denied* (2009). "The duties associated with these exceptions are considered nondelegable, and the principal is liable for negligence of the independent contractor because the responsibilities are deemed so important to the community that the principal should not be permitted to transfer those duties to another." *Id.* (citation and quotation marks omitted). The exceptions to the rule of nonliability encourage the principal to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries. *Bagley v. Insight Commc'ns Co.*, 658 N.E.2d 584, 588 (Ind. 1995)).

5

In entering summary judgment in favor of JDH, the trial court concluded that none of the five exceptions to the general rule of nonliablity apply here and therefore summary judgment on the issue of duty was appropriate. However, in *Hunt Construction Group, Inc. v. Garrett*, 964 N.E.2d 222 (Ind. 2012), our supreme court recently looked to appellate authority on this issue and derived a "good template" for analyzing a claim of negligence against a general contractor or construction manager for jobsite injuries suffered by a subcontractor's employee. *Id*. at 226 (citing *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212, 1218-20 (Ind. Ct. App. 1983)). The *Garrett* court concluded that the duty inquiry is twofold and requires answering: (1) whether a duty was imposed upon the construction manager by a contract to which it was a party; and (2) whether the construction manager assumed such a duty, either gratuitously or voluntarily. *Id*. Indeed, Barnett specifically argues that JDH owed him a legal duty of care by contract or, in the alternative, assumed a duty by its conduct. We consider each argument in turn.

**Specific Duty by Contract**

Barnett first asserts that JDH was charged by contract with the duty to provide him a safe jobsite. This Court has explained:

> The extent of the duty owed, if any, is a matter of contract interpretation. In determining whether a duty exists we will give effect to the intent of the parties as reflected by the language of the contract. We will determine the meaning of the contract by examining all of its provisions, not from a consideration of individual words, phrases, or paragraphs alone. Where the contract affirmatively evinces the parties' intent to charge one party with a duty of care, actionable negligence may be predicated upon that contractual duty. This exception to the general rule of nonliability is not triggered merely because a contractor may have a right to inspect and test the work, approve the work and/or employees of the general contractor or require the contractor to

6

> follow company safety rules. Rather, for this exception to apply, a contract must provide for a specific duty of care.

*Shawnee*, 962 N.E.2d at 82 (citations omitted).

The undisputed evidence indicates that the only contract to which JDH was a party was a simple verbal agreement between JDH and R.F. Mac by which JDH accepted R.F. Mac's written bid proposal to complete the demolition work. Notwithstanding this fact, Barnett asserts that JDH devised and maintained a written plan known as the JDH Safety and Health Program (the "Safety Program") and then baldly asserts that the Safety Program "was incorporated into" the verbal contract between JDH and R.F. Mac. Appellant's Br. at 20. Barnett argues that the Safety Program imposed an affirmative obligation upon JDH to maintain a safe worksite for the benefit of subcontractors and their employees.

Our review of the designated evidence, however, does not reveal as much. Although it is undisputed that the Safety Program exists, that is where the entirety of the evidence both begins and ends. Contrary to Barnett's bald assertion, there is no evidence that the Safety Program was somehow incorporated into any verbal agreement between the parties. Indeed, the undisputed evidence indicates that the verbal agreement was minimal and involved only an offer and acceptance of a bid proposal. There is no evidence that R.F. Mac was aware of the Safety Program, and we agree with JDH that the mere existence of the Safety Program hardly evinces these parties' intent to charge JDH, by contract, with a legal duty of care. As stated above, the duty-by-contract exception to the general rule of nonliability is not triggered merely because a contractor may have a right to require the contractor to follow company safety rules. Rather, for this exception to apply, a contract must provide for a specific duty of

7

care. Barnett has designated no evidence that such a contract existed. His reliance on the Safety Program to support such a duty is misplaced. We conclude, as a matter of law, that JDH did not owe a duty of care to Barnett pursuant to contract.[2]

## Assumption of Duty

We turn to whether JDH assumed by its actions or conduct a legal duty of care for jobsite-employee safety, either gratuitously or voluntarily. A duty of care may arise where a party gratuitously or voluntarily assumes such a duty. *Plan-Tec*, 443 N.E.2d at 1219. "The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Id*. The existence and extent of such a duty are ordinarily questions for the trier of fact. *Marks v. NIPSCO*, 954 N.E.2d 948, 956 (Ind. Ct. App. 2011), *aff'd on reh'g* 964 N.E.2d 238. However, the court will decide the issue as a matter of law when the record contains insufficient evidence to establish such a duty. *Id*.

In considering whether a contractor assumed by its conduct a legal duty of care for jobsite-employee safety, our supreme court held that "for a construction manager not otherwise obligated by contract to provide jobsite safety to assume a legal duty of care for jobsite-employee safety, the construction manager must undertake specific supervisory

---

[2] Barnett argues that the deposition testimony of Jerry Henson, JDH's safety director, creates a genuine issue of material fact as to whether JDH and R.F. Mac intended for the Safety Program to be incorporated into the verbal contract between the parties and to support a contractual duty for jobsite safety. Specifically, Barnett points to Henson's statement that the Safety Program was "applicable" at the time of the accident. Appellant's App. at 75. Despite Barnett's attempt to conflate this statement with the mere existence of the unilateral Safety Program to create a genuine issue, we are not persuaded. As stated above, there is no evidence that R.F. Mac was aware of the Safety Program, much less intended that the Safety Program be incorporated into the sparse verbal contract between the parties.

8

responsibilities beyond those set forth in the original construction documents." *Garrett*, 964 N.E.2d at 230. Barnett contends that the designated evidence viewed most favorably to him indicates that JDH undertook such supervisory responsibilities and therefore raises a genuine issue of material fact as to whether JDH assumed a legal duty of care for jobsite safety. We agree.

In response to JDH's motion for summary judgment Barnett designated evidence that, pursuant to the provisions of its Safety Program, JDH performed a "Site Safety Audit" at the worksite on August 18, 2010, the day before Barnett was injured. Appellant's App. at 199. The safety audit was conducted by Damon Gardner, JDH's safety coordinator for the state of Indiana. The written audit form, dated August 18, indicates that Gardner spent two and one-half hours inspecting the worksite specific to R.F. Mac's portion of the work. Gardner rated the worksite "below average" with regard to safety. *Id.* at 203. The written audit indicates that JDH provided some safety equipment to R.F. Mac that JDH deemed necessary. Gardner noted so many safety issues and hazards that he recommended R.F. Mac's worksite be shut down until all issues were resolved and hazards addressed. The written audit states that "[a] reinspection is required by JDH Safety Department prior to any further work from being performed by [R.F. Mac]. [R.F. Mac] is to contact JDH when site is ready for reinspection." The document then listed both August 18 and 19, 2010, as required compliance dates for the

specific safety protocols.[3]   Barnett maintains that this evidence supports a conclusion that JDH undertook specific supervisory responsibilities for jobsite safety prior to his injury.

JDH concedes that the safety audit was conducted but contends that the audit was conducted *after* Barnett's injury.   To support this claim, JDH relies on an affidavit by Gardner, in which Gardner avers that the date of "8/18/10" that he included on the written safety audit was a mistake and that he actually conducted the safety audit on August 19 or 20, after being advised by JDH's safety director, Henson, that an employee of R.F. Mac had been injured.   JDH also directs us to Henson's deposition testimony in which Henson, without reference to a specific date, implies that the safety audit was conducted after Barnett's injury.[4]

JDH asserts that Gardner's affidavit, supported by Henson's testimony, renders the timing of the safety audit "undisputed."  Appellee's Br. at 10.  However, a reasonable trier of fact could disbelieve Gardner's affidavit and determine that the document created by Gardner at the time of the safety audit is a more reliable and credible source.  We have recognized that it is error to base summary judgment solely on a party's self-serving affidavit when there is evidence before the court that raises a genuine issue as to the affiant's credibility.  *Insuremax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind. Ct. App. 2008), *trans. denied*.  Indeed, "[w]hen the facts are peculiarly in the knowledge of the movant's witnesses, there should be an

---

[3] Although not relevant for purposes of summary judgment, the evidence indicates that R.F. Mac ignored JDH's specific directive for safety compliance and re-entered the shut-down worksite without permission and completed the demolition.

[4] Henson does not reference the date of the safety audit in the designated deposition testimony.

10

opportunity to impeach them at trial, and their demeanor may be the most effective impeachment." *Id.* In this case, there is conflicting evidence regarding whether JDH conducted a jobsite safety audit or otherwise undertook specific supervisory responsibilities for jobsite safety prior to Barnett's injury. This evidence is sufficient to present to a trier of fact the question of whether JDH assumed a duty.

The dissent concludes that JDH did not assume a duty of care merely by having a company safety program and that we must look to JDH's actual affirmative conduct on the jobsite in determining whether JDH assumed a duty by conduct. We agree and note the dissent wholly ignores the above-mentioned designated evidence that JDH's appointed safety coordinator entered the jobsite, conducted a safety audit, and advised the subcontractor of safety-related provisions that the subcontractor was required to follow, the day before Barnett's injury. Although there is conflicting evidence on the timing of the audit, the fact that JDH engaged in this affirmative conduct is undisputed. As stated, evidence of such affirmative conduct on the part of JDH is sufficient to withstand summary judgment on the issue of assumed duty.

We are mindful that, on summary judgment, we are obligated to construe the evidence in favor of the nonmoving party and resolve all doubts against the moving party. *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 384 (Ind. Ct. App. 2004). Even if this Court believes that the nonmoving party will not be successful at trial, summary judgment should not be granted where material facts conflict or conflicting inferences are possible. *Id.* Accordingly, we conclude that JDH has failed to negate the element of duty and is not entitled to summary

11

judgment on that basis. We therefore reverse the trial court's entry of summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

NAJAM, J., concurs.

BAKER, J., concurs in part and dissents in part, with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JOSEPH MIKE BARNETT,          )
         )
  Appellant-Plaintiff,         )
         )
        vs.         )     No.  32A01-1307-CT-332
         )
JDH CONTRACTING, INC.,         )
         )
         )
  Appellee-Defendant.         )

APPEAL FROM THE HENDRICKS CIRCUIT COURT
The Honorable Carol J. Orbison, Senior Judge
Cause No. 32C01-1102-CT-16

**BAKER, Judge, concurring in part and dissenting in part.**

I respectfully concur in part and dissent in part in this case.  First, I agree with the majority's view that there was no express contract obligating JDH to provide Barnett and the other employees of R.F. MAC with the duty to provide a safe jobsite.  Slip op. at 7.  As the majority acknowledges, "the only contract to which JDH was a party was a simple verbal agreement between JDH and R.F. MAC's written bid proposal to complete the demolition work."  Id.  I further agree with the majority's proposition that "for this exception to apply, a contract must provide for a specific duty of care" and Barnett has not designated any

13

evidence that such a contract existed. Id. at 8.

However, I part ways with the majority's determination that there is a genuine issue of material fact that precludes summary judgment for JDH. A duty of care can be created where "a party gratuitously or voluntarily assumes a duty by conduct." Smith v. King, 902 N.E.2d 878, 883 (Ind. Ct App. 2009). However, to be found to have assumed a duty of safety for employees of an independent contractor, it must be established that the principal exercised a level of activity that would constitute "a deliberate attempt to control or actively supervise safety at the job site." Merrill v. Knauf Fiber Glass, 771 N.E.2d 1258, 1268 (Ind. Ct. App. 2002).

In a sense, many general contractors will attempt to minimize the risk of resulting injuries to its subcontractors on the jobsite. And Barnett maintains that JDH had assumed a duty of care for his safety by having a company safety program. However, our courts have only found assumed duties where the entity sought to be charged with a duty of care with respect to contracted work undertook a significant amount of safety-related activities. These include appointing safety inspectors, holding regular safety meetings, inspecting the job site on a daily basis, and directing that certain safety precautions be taken on the job site. Robinson v. Kinnick, 548 N.E.2d 1167, 1169 (Ind. Ct. App. 1990).

In this case, Barnett asserts that the focus should be on what JDH's internal company program says rather than what JDH's actual conduct was on the site before the injury occurred in determining whether JDH assumed a duty by conduct. We have found no authority for such a proposition. Rather, as this court held in Marks v. NIPSCO, before there

14

can be an assumption of a duty by conduct, "the actor must specifically undertake to perform the task he is charged with having performed negligently; without actual assumption of the undertaking there can be no corresponding legal duty to perform the undertaking." 954 N.E.2d 948, 955 (Ind. Ct. App. 2011).

Indeed, in Marks, this court rejected the same argument that Barnett invokes. Specifically, NIPSCO had a safety program set forth in a safety handbook and video that had a number of safety-related provisions that subcontractors were to follow. Id. at 956. It was determined that NIPSCO'S safety plan did not create an assumed duty by contract or conduct, noting that there was no evidence "demonstrating that NIPSCO, by affirmative conduct, specifically undertook a task vis-à-vis the injured plaintiff and his truck, which it subsequently performed in a negligent manner." Id. (emphasis in original).

For the reasons stated above, I cannot agree that the mere existence of JDH's safety plan created a duty by conduct in the absence of actual, affirmative conduct. In other words, the designated evidence does not establish that JDH gratuitously or voluntarily assumed a duty of jobsite safety to Barnett and R.F. MAC. As a result, I would affirm the trial court's entry of summary judgment for JDH.